XAVIER BECERRA
Attorney General of California
DEBORAH B. WADLEIGH
Supervising Deputy Attorney General
COLIN A. SHAFF
Deputy Attorney General
State Bar No. 300301
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Telephone: (213) 269-6039
  Fax: (213) 897-7604
  E-mail: Colin.Shaff@doj.ca.gov
*Attorneys for Defendants*
*N. Lind and D. Long*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KENTHA MCDOWELL,** | 2:19-CV-00086 JVS-MRW |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **R. FOX, et al.,** | |
| Defendants. | Date:      July 1, 2019<br>Time:      1:30 p.m.<br>Courtroom: 550, 5th Floor<br>Judge:    The Honorable James V. Selna<br>Trial Date: None set<br>Action Filed: January 11, 2019 |

TO THE COURT, AND TO PLAINTIFF KENTHA McDOWELL, BY AND

THROUGH HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 1, 2019, at 1:30 a.m., in Courtroom

10C of the United States Courthouse located at 411 West Fourth Street, Santa Ana,

California, or at another date and time as set by the Court, Defendants D. Long and

N. Lind will and hereby do move for an order dismissing the Fourth Amended

Complaint of Plaintiff Kentha McDowell. This motion is made under Federal Rule

of Civil Procedure Rule 12(b)(6), on the grounds that the facts alleged by Plaintiff fail to state a claim as to any constitutional injury under the Eighth Amendment. In addition, Defendants move for dismissal on the grounds that the facts, as alleged in the Fourth Amended Complaint, establish that the action was brought after the expiration of the relevant statute of limitations. Finally, Defendants are entitled to qualified immunity.

This Motion is based on the attached Memorandum of Points and Authorities, the pleadings and records in this case, and on consideration of such other matters as the Court may deem appropriate.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place telephonically on May 1, 2019, and following additional written communications between counsel on May 2, 2019, May 9, 2019, and May 10, 2019.

Dated:  May 24, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DEBORAH B. WADLEIGH
Supervising Deputy Attorney General

*/s/ Colin A. Shaff*

COLIN A. SHAFF
Deputy Attorney General
*Attorneys for Defendants N. Lind and D. Long*

LA2019500724
13707285_2.docx

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities.................................................................1

Introduction ...........................................................................................................1

Summary of Allegations .......................................................................................2

Standard on Motion to Dismiss ............................................................................3

Grounds for Motion ..............................................................................................4

Argument...............................................................................................................5

     I.     The Action Is Barred By the Statue of Limitations.............................5

     II.    Plaintiff Fails to State a Claim Under the Eighth Amendment as to Defendants Lind and Long. .............................................................8

          A.    Standard on Eighth Amendment Deliberate Indifference Claims. ..........................................................................................8

          B.    Plaintiff Fails to Establish that Defendants Lind and Long May Be Liable for Any Actions Relating to Plaintiff's Diet, or Post-Operative Treatment. ...........................................9

     III.   Defendants Are Entitled to Qualified Immunity................................14

Conclusion...........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011)..........................................................................14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...................................................................3, 4, 9

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007).............................................................................3

*Butler v. Nat'l Cmty. Renaissance of Cal.*
    766 F.3d 1191 (9th Cir. 2014)........................................................5, 6

*City & Cty. of San Francisco, Calif. v. Sheehan*
    135 S. Ct. 1765 (2015)......................................................................13

*Clement v. Gomez*
    298 F.3d 898 (9th Cir. 2002)...........................................................14

*Durning v. First Boston Corp.*
    815 F.2d 1265 (9th Cir. 1987)...........................................................4

*Estelle v. Gamble*
    429 U.S. 97 (1976)..............................................................................8

*Farmer v. Brennan*
    511 U.S. 825 (1994)......................................................................8, 11

*Foster v. Runnels*
    554 F.3d 807 (9th Cir. 2009)...........................................................15

*Gant v. Cnty. of L.A.*
    772 F.3d 608 (9th Cir. 2014).............................................................4

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982)..........................................................................14

*Hunt v. Dental Dep't*
    865 F.2d 198 (9th Cir. 1989)...........................................................15

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*Ileto v. Glock Inc.*
349 F.3d 1191 (9th Cir. 2003).............................................................4

*Ivey v. Bd. of Regents of Univ. of Alaska*
673 F.2d 266 (9th Cir. 1982).............................................................3

*Jacobson v. Schwarzenegger*
357 F.Supp.2d 1198 (C.D. Cal. 2004)...............................................4

*Jones v. Blanas*
393 F.3d 918 (9th Cir. 2004)...........................................................5, 6

*Lacey v. Maricopa County*
693 F.3d 896 (9th Cir. 2012).........................................................9, 12

*Leer v. Murphy*
844 F.2d 628 (9th Cir. 1988).........................................................9, 12

*LeMaire v. Maass*
12 F.3d 1444 (9th Cir. 1993)...........................................................15

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2002)...........................................................16

*Mullenix v. Luna*
136 S. Ct. 305 (2015)...........................................................15

*Pearson v. Callahan*
555 U.S. 223 (2009).............................................................14

*Peralta v. Dillard*
744 F.3d 1076 (9th Cir. 2014).........................................................13

*Ploof v. Ryan*
689 F. App'x 522 (9th Cir. 2017).....................................................15

*Pouncil v. Tilton*
704 F.3d 568 (9th Cir. 2012).............................................................5

*Rideau v. Small*
402 F. App'x 165 (9th Cir. 2010).....................................................16

iii

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Rivera v. Peri & Sons Farms, Inc.*
    735 F.3d 892 (9th Cir. 2013)..................................................................5

5
6

*Saucier v. Katz*
    533 U.S. 194, 202 (2001)......................................................................14

7
8

*Silva v. Crain*
    169 F.3d 608 (9th Cir. 1999)..................................................................6

9
10

*Somers v. Apple, Inc.*
    729 F.3d 953 (9th Cir. 2013)..................................................................3

11

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001)..................................................................4

12
13

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011)................................................................4

14
15

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004)................................................................8

16
17

*Toussaint v. McCarthy*
    801 F.2d 1080 (9th Cir. 1986)................................................................8

18
19

*Vinson v. Thomas*
    288 F.3d 1145 (9th Cir. 2002)..............................................................13

20
21

*Wood v. Housewright*
    900 F.2d 1332 (9th Cir. 1990)...........................................................8, 9

22

**STATUTES**

23

29 U.S.C. § 701 ......................................................................................12

24

42 U.S.C. § 504 ......................................................................................12

25

42 U.S.C. § 1983................................................................................1, 5, 12

26

42 U.S.C. § 12111 ..................................................................................12

27

Cal. Code Civ. P. § 335.1 .........................................................................5

28

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Code Civ. P. § 352.1.................................................................6, 7

Cal. Code Civ. P. § 474....................................................................6

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ..........................................................................13

Eighth Amendment ....................................................................*passim*

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................3, 4

Fed. R. Civ. P. 15(b) ......................................................................6, 7

Fed. R. Civ. P. 15(c) ......................................................................6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Kentha McDowell, represented by counsel, brings the instant action pursuant to 42 U.S.C. § 1983. Plaintiff was incarcerated at Ironwood State Prison ("ISP") during the events at issue, although he is now on parole. In the operative Fourth Amended Complaint, Plaintiff alleges one claim[1] as to Defendants N. Lind and D. Long, and apparently contends that they were deliberately indifferent to his medical needs, and thereby violated his Eighth Amendment rights. (ECF No. 26, ("FAC") at 9.) During the events at issue, Plaintiff alleges that Defendant Lind was working as the "Chief of Staff/ Physician and Surgery" at ISP, while Defendant Long was the Assistant Warden of ISP. (FAC at 3.) Plaintiff has sued Defendant Long in his individual and official capacities, although the Court ordered service as to both Defendants in their individual capacities only. (ECF No. 33, Order Directing Service, at 1.)

As argued below, the Fourth Amended Complaint must be dismissed because the Eighth Amendment claims alleged as to Defendants accrued in 2007, and the statute of limitations has expired as to any action arising from an alleged injury caused by Defendants. Moreover, Plaintiff fails to state a claim under the Eighth Amendment relating to any denial of medical treatment or failure to comply with medical recommendations, associated with his being provided a "'normal' diet that was specially tailored to white males." (FAC at 4.) Finally, Defendants are entitled to qualified immunity.

---

[1] The Fourth Amended Complaint also includes a second claim alleging that correctional officers failed to protect him from an inmate assault, but this claim is not alleged against Defendants Lind and Long, and has been dismissed. (*See* ECF No. 29, "Order," at 2.)

## SUMMARY OF ALLEGATIONS

The allegations made in the Fourth Amended Complaint are not entirely clear,[2] however, as best as can be deciphered, Plaintiff makes the following contentions:

Plaintiff had a preexisting heart condition, and in 2007, he received treatment for that heart condition while he was incarcerated at Ironwood State Prison. (FAC at 4, 12.) Plaintiff contends that the treatment was successful, and that he was free from heart disease following the surgery. (FAC at 12.) Plaintiff alleges that a doctor, who serves as a primary care physician at ISP but who is not employed by the California Department of Corrections and Rehabilitation, "ordered" Plaintiff to follow a "heart healthy" diet in 2008. (FAC at 6.) However, Plaintiff alleges that, on his return to ISP, he was "forced" to eat the "normal" diet, which was "specially tailored to white males." (FAC at 4.) Plaintiff contends that his consumption of the "normal" prison diet caused his heart disease to return, and that, "[a]s a result of being denied the MD's ordered diet plan, Plaintiff had at least two heart attacks and required heart surgery." (*Id.* at 4-6.) Plaintiff contends that African-American men digest foods differently than "white males," due to unspecified "enzyme/gene differences between the two races." (FAC at 7.) Plaintiff contends that this information is "common knowledge," and should be "second nature" to health care providers. (*Id.*) Plaintiff concludes that Defendants Long and Lind were deliberately indifferent to his medical needs because they ignored a doctor's order to give Plaintiff a special diet, but instead gave him food that "was literally giving Plaintiff heart attacks." (FAC at 10, 12.) Plaintiff suggests that Defendant Long ignored Plaintiff's medical needs for over five years, in order to maintain an appearance that ISP was running smoothly, and to also facilitate an "elaborate scheme" between various persons and entities who sought to profit from

---

[2] If the Court determines that Plaintiff has alleged a claim not addressed by this Motion, Defendants reserve the right to move for dismissal of that additional claim.

performing heart surgeries on African-American inmates, despite knowing that heart disease in African-American inmates "could have been avoided by simply changing the diets of African-Americans in the prison system." (FAC at 8.)

Plaintiff also alleges that the actions and inactions of Defendants in connection with Plaintiff's diet and with his "ambulation," including the risk that Plaintiff's heart could "get popped right out of his chest," constituted a violation of the Americans with Disabilities Act and the Rehabilitation Act. (FAC at 12.) Finally, Plaintiff contends that he has certain mobility difficulties, and is classified as an "Armstrong" inmate, in that he uses a cane to ambulate: yet, he also maintains that Defendant Long improperly approved him for use of a cane. (*Id.* at 4-5.)

Plaintiff alleges that these various actions and inactions constitute a violation of his Eighth Amendment rights.

## STANDARD ON MOTION TO DISMISS

A defendant is entitled to dismissal of an action under Federal Rule of Civil Procedure 12(b)(6) where (1) the plaintiff has failed to state a cognizable legal theory, or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982). Rather, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").

Although a plaintiff is not required to allege "detailed factual allegations," the action may be dismissed when the plaintiff fails to allege facts sufficient to suggest "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for an injury. *Id*.; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (noting that the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").

In evaluating a Rule 12(b)(6) motion, the court accepts as true all material facts alleged in the complaint and interprets them in the light most favorable to the non-moving party. *Gant v. Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). A court may consider not only the allegations contained in the pleadings, but may also consider exhibits attached to the complaint, and matters properly subject to judicial notice. *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1204 (C.D. Cal. 2004). However, the court does not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). And a plaintiff may affirmatively plead himself out of a claim by including facts contrary to his claims. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); *see also Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (finding that a Court may disregard allegations that are contradicted by exhibits attached to a plaintiff's pleading.).

## GROUNDS FOR MOTION

Defendants are entitled to dismissal of the action because any putative claim regarding Plaintiff's diet accrued in 2007 or 2008, when he returned to ISP following his heart procedure, and so the instant claims have been brought outside

the statute of limitations. Further, Plaintiff fails to allege any facts plausibly showing that Warden Long or Defendant Lind personally deprived him of some necessary medical accommodation. Similarly, Plaintiff alleges no facts plausibly showing that he developed any specific heart issue because of the diet provided to him in prison, and so has failed to allege any facts plausibly showing that any Defendant caused him to suffer harm.

Finally, Defendants are entitled to qualified immunity.

## ARGUMENT

## I.   THE ACTION IS BARRED BY THE STATUE OF LIMITATIONS.[3]

The statute of limitations for actions brought under 42 U.S.C § 1983 is based on the statute of limitations for personal injury actions in the forum state. *See Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.") In California, the statute of limitations for personal injury cases is two years. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Code Civ. P. § 335.1.

A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the claim. *Pouncil v. Tilton*, 704 F.3d 568, 573–74 (9th Cir. 2012) (clarifying that while § 1983 actions are governed by the forum state's statute of limitations, federal law determines when a § 1983 claim accrues; under federal law, accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of the action). The law of the forum state also governs whether the statute of limitations for a section 1983 action maybe be tolled: in

---

[3] Although the statute of limitations is an affirmative defense, it may be raised on a motion to dismiss when the pleading defect is apparent. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (stating that "[w]hen an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.").

California, the statute of limitations is tolled for two years when an action is brought by a prisoner. *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999); *Jones*, 393 F.3d at 928 n. 5; Cal. Code Civ. P. § 352.1.

Similarly, state law determines whether a claim may relate back to an earlier pleading: although Federal Rule of Civil Procedure 15(b) and (c) describe the circumstances by which a complaint may relate back, state law will control when it provides for more lenient rules regarding the relation back of a claim. *Butler*, 766 F.3d at 1200. California generally does not permit the relation back of amendments, except to correct the mis-identification of a defendant. *Id.* at 1201; Cal. Code Civ. P. § 474. Rule 15 provides that an action may relate back to an earlier pleading when the basic claim arose from the same conduct identified in the original pleading, and when other elements are established. *Butler*, 766 F.3d at 1202; Fed. R. Civ. P. 15(b).

In the Fourth Amended Complaint, Plaintiff alleges that Defendants were informed on or about June 12, 2007 by "Dr. Gary Thompson M.D. and Dr. Thaddeus Wilson M.D." that Plaintiff had "special needs" and faced "substantial risks" due to his medical procedure. (FAC at 12.) Plaintiff also alleges that he was ordered by doctors to eat a "heart healthy" diet in 2008, and that Defendants Long and Lind "denied" the diet plan. (FAC at 6.) As a consequence of his diet, Plaintiff "began developing heart disease," requiring surgery some years later. (FAC at 4-5.) Plaintiff concludes that Defendants showed deliberate indifference to his medical needs by failing to follow an "MD's order" and failing to provide him a diet that would prevent the recurrence of his heart disease. (*Id.* at 7.)

Plaintiff's allegations establish that he knew, or had reason to know, of the alleged claim raised in the Fourth Amended Complaint in 2007 or 2008. Plaintiff's allegations affirmatively establish that he was aware in 2007 or 2008 that he had certain medical risks, and his allegations further establish that he believed that Defendants had violated his constitutional rights when they did not provide him a

special diet. As such, Plaintiff's allegations establish that the claim raised in this action accrued in 2008 at the latest; therefore, the statute of limitations expired as to any claim arising as to that conduct by 2012[4]. Yet, the Complaint in this action was not filed until September 6, 2016, more than eight years after the expiration of the statue of limitations. (*See* ECF No. 1, Complaint.) As such, Plaintiff's claim under the Eighth Amendment is barred by the statute of limitations.

Moreover, Plaintiff alleges that in 2012, he was transferred from ISP to another facility, the California Medical Facility, and he offers no facts suggesting that Defendants were responsible for his diet after his transfer. (FAC at 8.) The initial Complaint filed in this action addresses claims arising at the California Medical Facility, and does not include any allegations as to Defendants Long or Lind. (*See* ECF No. 1 at 2.) In fact, Plaintiff does not allege any claim relating to Defendants Long and Lind until the operative Fourth Amended Complaint, filed on April 30, 2018. (*Compare* ECF No. 22, Third Amended Complaint, at 3-4 (naming correctional defendants at California Medical Facility and at California Institution for Men), *with* ECF No. 26, Fourth Amended Complaint, at 3 (naming Defendants Long and Lind, who were employed at Ironwood State Prison.)) Because the instant Eighth Amendment claims do not arise out of the same conduct or occurrence identified in the original pleading, nor are Plaintiff's present claims simply clarifying the correct party responsible for some previously-alleged injury, the operative Fourth Amended Complaint does not relate back to the original pleading. Fed. R. Civ. P. 15(b), (c). Rather, the claims in the Fourth Amended Complaint are wholly different than the claims alleged in the initial pleading; as such, Plaintiff's claims as to Defendants Long and Lind were first raised on April 30, 2018, when

---

[4] California law provides a two-year statute of limitations for any "injury to . . . an individual . . . caused by the wrongful act or neglect of another." Cal. Code P. § 335.1. This two-year period is tolled for an additional two years due to Plaintiff's status as an incarcerated person. Code Civ. P. § 352.1.

the Fourth Amended Complaint was filed, more than *ten years* after the alleged accrual of Plaintiff's cause of action.

The allegations in the FAC establish that Plaintiff's Eighth Amendment claims as to Defendants Long and Lind accrued in 2007 or 2008, but were not raised until 2018. Because the operative California statutes of limitations requires that claims be brought within four years of the accrual of the cause of action, Plaintiff's Fourth Amended Complaint must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT AS TO DEFENDANTS LIND AND LONG.

### A. Standard on Eighth Amendment Deliberate Indifference Claims.

Only "deliberate indifference to serious medical needs" can support an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). To prevail on a deliberate indifference claim, a plaintiff must show that he was exposed to some specific risk or to a medical deprivation that was "objectively, sufficiently serious" and also, that prison officials knew of, and disregarded, the excessive risk to the inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). The plaintiff must allege facts plausibly showing that a prison official was "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In contrast, "prison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Id.* at 826.

"Deliberate indifference" is not shown by evidence of negligence, nor of a difference of medical opinion between doctors, or between a doctor and a patient. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (noting that when a deliberate indifference claim is based on a difference of medical opinion, the doctor cannot be

liable unless the chosen course of treatment was "medically unacceptable under the circumstances.") Nor is the Eighth Amendment violated when correctional officers delay treatment for an inmate, when the delay does not cause the inmate to experience "substantial harm." *Wood*, 900 F.2d at 1334-35.

To state a claim for a particular violation or injury, a plaintiff must identify the person who caused the alleged deprivation, focusing "on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). A particular defendant is "liable only for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A person causes a constitutional injury when he or she takes an affirmative act that causes the harm, omits to perform a legally required act that causes the harm, or sets in motion acts by others which the defendant knows or reasonably should know would cause others to inflict a constitutional injury. *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012).

### B. Plaintiff Fails to Establish that Defendants Lind and Long May Be Liable for Any Actions Relating to Plaintiff's Diet, or Post-Operative Treatment.[5]

In the operative Fourth Amended Complaint, Plaintiff alleges that Warden Long and Defendant Lind knew that Plaintiff had certain medical needs, but they refused to change his diet, and therefore were deliberately indifferent to Plaintiff's serious medical need. (*See e.g.*, FAC at 10.)

---

[5] Plaintiff also alleges that a state entity, the California Department of Corrections and Rehabilitations, "takes part in Institutional Racism" because it does not "take into account the differences between the races when it comes to diet." (FAC at 7.) Plaintiff contends that an "enzyme/gene difference" makes African-American men "more 'salt sensitive' than white males." (*Id.*) Plaintiff does not explain the medical basis for this contention, nor does he describe how this contention is relevant to the claim alleged against Defendants: notably, Plaintiff does not allege that Defendants personally engaged in "institutional racism," nor that such putative conduct violates the Eighth Amendment. Moreover, to the extent that Plaintiff acknowledges that the California Department of Corrections and Rehabilitations does not provide different diets for inmates of different races, *see* FAC at 7, he seems to have conceded that Defendants were not deliberately indifferent to his medical needs, when they declined to provide him a racially customized diet.

1    Plaintiff alleges that both Defendants were aware of Plaintiff's medical issues
2  because of "notes, medical records and transfer papers having the signature of the
3  warden, associate warden and Dr. Lind." (FAC at 10.) Plaintiff also alleges that his
4  dietary needs were "common knowledge" due to the "great media 'hype'" about
5  heart healthy foods. (FAC at 12.) Plaintiff contends that it is "common knowledge"
6  that "African-American men are more susceptible to heart disease through [sic] a
7  'normal/white' diet." (FAC at 7.) Plaintiff further implies that, because "both
8  Defendants were deliberately indifferent to the "serious medical/dietary needs of
9  Black Americans," they were also aware of the specific dietary issues facing
10  Plaintiff, and that they knew of the risks he faced from consuming a "normal" diet.
11  (FAC at 12.)

12    Based on these factual allegations, Plaintiff argues that Defendants knew that
13  he was exposed to a substantial risk of harm arising from his consumption of a
14  "'normal' diet that was specially tailored to white males," and that Defendants were
15  also aware that the diet provided to him was "literally giving [him] heart attacks."
16  (FAC at 4, 10.) Plaintiff contends that Defendants knew that the only thing Plaintiff
17  had to do to prevent the recurrence of his heart disease was to "follow the diet the
18  MDs ordered him to eat." (FAC at 4.) He concludes that because Defendants were
19  aware of his dietary needs, and failed to accommodate those needs by providing a
20  special diet, they are liable under the Eighth Amendment for the eventual
21  recurrence of his heart disease. (FAC at 10-12.)

22    Plaintiff's factual allegations are wholly conclusory, and fail to state a claim.
23  First, Plaintiff alleges no facts plausibly suggesting that he was exposed to an
24  objectively serious risk of harm from the "normal" diet served to inmates. Plaintiff
25  alleges no facts regarding the specific health risks posed to *him* from the "normal"
26  prison diet, but instead he suggests that an "enzyme/gene difference" makes
27  African-American males more "salt sensitive" than white males. (FAC at 7.)
28  Plaintiff fails to indicate the factual basis for this belief, nor does he allege facts

suggesting that an allegedly wide-spread racial "sensitivity" demonstrates that any condition or circumstance arising to pose an objectively serious risk of harm to Plaintiff as an individual. Plaintiff's factual allegations do not establish that he was at a serious risk of harm, so he has failed to establish the first prong of a deliberate indifference claim.

Further, Plaintiff fails to allege facts plausibly showing that either Defendant knew of, and consciously disregarded, a substantial risk of serious harm posed to Plaintiff. *Farmer*, 511 U.S. at 839. While Plaintiff vaguely suggests that certain "signatures" indicated that Defendants were aware of his medical condition, he alleges no specific facts that plausibly establish either Defendant was actually aware of any dietary recommendation: he contends that "MD notes, medical records and transfer papers having the signature of the warden, associate warden, and Dr. Lind," *see* FAC at 10, demonstrate that Defendants were aware of his medical conditions and needs, but Plaintiff fails to explain how a signature on a "transfer recommendation" shows that Warden Long and Dr. Lind were aware that Plaintiff required a specialized diet. Nor do these signatures suggest that Defendants were actually aware that Plaintiff would be harmed by his consumption of the normal prison diet.[6] Indeed, Plaintiff implies that Warden Long and Dr. Lind may *not* have known of Plaintiff's dietary needs, as he suggests that the doctors who allegedly ordered Plaintiff to consume a certain diet "just didn't care enough to share information with the prison staff." (FAC at 7.)

Plaintiff's factual allegations do not plausibly establish that he was exposed to a serious risk of harm arising from the "normal" prison diet, nor to the allegation

---

[6] To the extent that Plaintiff contends that it is "common knowledge" that African-Americans are exposed to a higher risk of heart disease, he fails to allege any facts suggesting that Defendants were deliberately indifferent to a specific risk of harm posed to Plaintiff, as an individual. Plaintiff's allegations about the statistical health issues faced generally by African-Americans does not establish that Defendants knew of, and disregarded, any significant risk of harm posed to Plaintiff, nor that they actually inferred that Plaintiff was being harmed by consuming the "normal" diet that is served to all inmates.

1   establish that either Defendant actually knew that the "normal" prison diet posed a

2   serious risk to Plaintiff's health. Plaintiff fails to state a claim for deliberate

3   indifference.

4        Next, Plaintiff alleges no facts suggesting that Warden Long or Doctor Lind

5   were actually responsible for providing Plaintiff his meals, or for establishing what

6   meals Plaintiff could safely consume: instead, Plaintiff contends only that Warden

7   Long was the warden and assistant warden for ISP, that he failed to complete

8   certain "incident reports," and he "benefitted from participating in Institutional

9   Racism." (*See* FAC at 3, 5-6, 8.) Plaintiff also alleges no specific facts as to the

10  duties or responsibilities of Dr. Lind, either in relation to Plaintiff's meals, or in

11  relation to providing medical treatment directly to Plaintiff. As such, Plaintiff fails

12  to establish that either Defendant was personally responsible for any injury arising

13  from Plaintiff's diet, or from the alleged medical consequences of his consuming

14  the normal meal at ISP. For this reason, Plaintiff fails to state a claim for any

15  constitutional harm caused by Defendants. *See Leer*, 844 F.2d at 633.

16       Likewise, Plaintiff alleges no facts plausibly suggesting his diet was the

17  proximate or actual cause of the recurrence of his heart disease five years later at a

18  different institution, nor does he allege facts plausibly suggesting that that the

19  recurrence of his heart disease would have been prevented had he consumed a

20  different diet. (*See e.g.*, FAC at 6.) Indeed, Plaintiff alleges no specific facts to

21  suggest that Defendants' particular actions, namely declining to provide Plaintiff a

22  specialized diet that was not actually available within the prison system, was the

23  but-for cause of his medical issues that arose years later. Because Plaintiff has

24  failed to allege any facts showing that the conduct of Defendants caused him to

25  redevelop heart disease after the passage of five years, he has failed to state a claim

26  for any constitutional injury.[7] *See Lacey*, 693 F.3d at 915.

27       [7] Plaintiff also alleges that "all Defendants of ISP are in violation of both
28  Americans with Disabilities Act (ACA, 42 U.S.C. §§ 12111 et seq. and Section 504

Finally, Defendants cannot be liable for an alleged failure to provide a certain diet or medical treatment, when such treatment was not available within the California penal system. *See Peralta v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014) (finding that a doctor could not be liable for damages arising from an alleged delay in treating an inmate, when the delay was caused by a shortage of resources, or by treatment options being unavailable.) In the Fourth Amended Complaint, Plaintiff does not suggest that the medical treatment he sought was actually available to him,[8] nor that Defendants intentionally withheld treatment that was available to him. Instead, Plaintiff alleges that it is "civilian practice in California" to treat heart disease through diet, and that Defendants ignored a doctor's order to provide Plaintiff a "special diet" to help treat his heart disease. (FAC at 9-10.) Yet, Plaintiff does not allege that a special diet was available to him at ISP, nor does he allege that any particular diet was recommended by any medical professional.[9] Because Plaintiff alleges no facts suggesting that the treatment he sought could be provided to him, he is not entitled to damages arising from Defendants' alleged failure to provide such treatment.

For the foregoing reasons, Plaintiff has failed to allege facts showing that he was exposed to an objectively serious risk of harm arising from his consumption of the normal prison diet, and has failed to allege facts suggesting that Defendants

---

(Rehabilitation ACT), 29 U.S.C. § 701." (FAC at 13.) Plaintiff alleges no facts relating to this statutory claim, nor does he allege any basis for Defendants' personal liability on this allegation. Moreover, individual capacity claims under the Americans with Disabilities Act and the Rehabilitation Act cannot be brought under § 1983. *See City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773-74 (2015); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Plaintiff fails to state a claim on this theory of liability.

[8] Indeed, Plaintiff affirmatively alleges that CDCR "does not take into account the differences between the races when it comes to diet," so suggests that Defendants were unable to provide the racially-customized diet he demands. (FAC at 7)

[9] Plaintiff does not explicitly identify the doctor who issued this order, but instead refers to an unidentified "Medical Doctor in Blythe," FAC at 6, or "Dr. Gary Thompson M.D. and Dr. Thaddeus Wilson M.D. from the Riverside County Regional Medical Center in Moreno Valley, California," FAC at 12, as the individuals who "ordered" that he consume a "heart healthy diet" to address his heart disease.

1  knew of, and disregarded any risk to his health. Further, Plaintiff does not allege

2  facts showing that Defendants were personally responsible for setting his diet, nor

3  that he could have been provided any different diet, nor that Defendants' action was

4  the cause of any injury. For these reasons, the Fourth Amended Complaint should

5  be dismissed.

6  **III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

7       The defense of qualified immunity protects "government officials . . . from

8  liability for civil damages insofar as their conduct does not violate clearly

9  established statutory or constitutional rights of which a reasonable person would

10  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officers are entitled

11  to qualified immunity for their actions unless it is shown that the "contours" of the

12  alleged constitutional injury are "'sufficiently clear' that *every* "reasonable official

13  would have understood that what'" he or she is doing violates some constitutional

14  right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added) (*citing*

15  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have

16  placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at

17  741; *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper

18  inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair

19  warning' to the officials that their conduct was unconstitutional.") (*quoting Saucier*

20  *v. Katz*, 533 U.S. 194, 202 (2001)). Qualified immunity "protects 'all but the

21  plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at

22  743 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

23       To determine whether a defendant is entitled to qualified immunity, the court

24  must consider "(1) whether the official violated a constitutional right and (2)

25  whether the constitutional right was clearly established." *Pearson v. Callahan,* 555

26  U.S. 223, 236 (2009*)* (overruling the sequence of the two-part test that required

27  determining a deprivation first and then deciding whether such right was clearly

28  established, as required by *Saucier*). The question whether qualified immunity

applies must be framed very narrowly, in light of the case's specific factual context. *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (holding in a Fourth Amendment excessive-force case that the qualified immunity analysis should address whether an officer violated the constitution when using deadly force in response to "a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer at Cemetery Road").

First, as argued above, Defendants did not violate Plaintiff's rights under the Eighth Amendment. No facts suggest that Defendants knew that Plaintiff was exposed to a serious medical risk from the "normal" diet served at ISP, nor do any facts suggest that Defendants actually inferred that Plaintiff's consumption of the normal diet would cause him to develop heart disease. Further, Plaintiff will be unable to establish that he had a clearly-established right in 2007 to consume any particular diet. To the contrary, binding precedent in the Ninth Circuit establishes that inmates do not have a constitutional right to a specific diet: although inmates are entitled to receive food that is sufficient to maintain health, they do not have a constitutional right to the diet of their choosing. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (noting that a constitutionally-acceptable diet is one that satisfies an inmate's nutritional requirements); *see also Foster v. Runnels*, 554 F.3d 807, 813 n.2 (9th Cir. 2009) (emphasizing that the "nutritional value of the prison meals," or whether meals contain "sufficient calories and nutrients to sustain [an inmate] for an entire day," is the relevant consideration to determine whether a given diet was adequate.) Similarly, the refusal of prison staff to provide a special diet to an inmate does not constitute deliberate indifference. *Hunt v. Dental Dep't*, 865 F.2d 198, 201 n.2 (9th Cir. 1989); *see also Ploof v. Ryan*, 689 F. App'x 522 (9th Cir. 2017) (finding that summary judgment was properly entered against an inmate who alleged correctional staff showed deliberate indifference to his heart condition when they did not provide him a "cardiac diet," because no genuine

1    dispute of material fact showed that the diet provided was inadequate.); *Rideau v.*
2    *Small*, 402 F. App'x 165, 166 (9th Cir. 2010) (finding that a district properly
3    dismissed an inmate's claim that prison officials improperly denied him a
4    therapeutic medical diet beneficial for his heart condition, because disagreement
5    about the course of treatment does not constitute deliberate indifference.)

6        The foregoing cases show that it was not clearly established in 2007 or 2008,
7    nor indeed, in 2017, that prison officials would violate an inmate's Eighth
8    Amendment rights if they did not provide him a customized diet in response to the
9    inmate's heart condition. Because it was not clearly established that inmates had a
10   right to a specific medical diet, Defendants are entitled to qualified immunity.

11   **CONCLUSION**

12       The claims alleged in the Fourth Amended Complaint beyond the expiration
13   of the statute of limitations for claims for personal injury, as Plaintiff has alleged
14   that his injuries accrued in 2007 or 2008, but no claim was brought until 2018.
15   Likewise, the FAC contains no facts suggesting that Defendants knew of, and
16   disregarded, a serious risk of harm posed to Plaintiff from the "normal" prison diet.
17   The Fourth Amended Complaint should be dismissed, and because the defects in
18   the pleading "could not possibly be cured by the allegation of other facts," *Lopez v.*
19   *Smith*, 203 F.3d 1122, 1130-1131 (9th Cir. 2002) (*quoting Doe v. United States*, 58
20   F.3d 494, 497 (9th Cir. 1995)), leave to amend should be denied.

21   Dated:  May 24, 2019                              Respectfully submitted,

22                                                     XAVIER BECERRA
                                                       Attorney General of California
23                                                     DEBORAH B. WADLEIGH
                                                       Supervising Deputy Attorney General
24
25                                                     */s/ **Colin A. Shaff***

26                                                     COLIN A. SHAFF
                                                       Deputy Attorney General
27                                                     *Attorneys for Defendants N. Lind and*
                                                       *D. Long*

28   LA2019500724/13707285_2.docx

# CERTIFICATE OF SERVICE

Case Name:   **McDowell v. Fox, et al.**      Case No.      **2:19-cv-00086 JVS-MRW**

I hereby certify that on <u>May 24, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 24, 2019</u>, at Los Angeles, California.

|  |  |
|---|---|
| R. Velasco | /s/ R. Velasco |
| Declarant | Signature |

LA2019500724
53447003.docx